## Goodridge v. Roule et al.

Before Gibson, P. J., Carson and Cummins, JJ.

*Wm. C. Porter*, for plaintiff.

*David H. Weiner, Barron P. McCune, Harrington Adams* and *Harold V. Fergus*, for defendants.

GIBSON, P. J., April 21, 1952.—I. E. Goodridge presented his petition averring that he was an alderman and ex officio a justice of the peace in Washington County, and also represented, as president, the minor judiciary of the county. He was elected alderman in November of 1947, certain of the aldermen and justices of the peace were elected November 8, 1949, and certain of the aldermen and justices of the peace in the county were elected November 6, 1951. He avers that defendants unjustly refused to fix and pay for the services of justices of the peace and aldermen in accordance with the provisions of Act of January 7, 1952, P. L. 1841. (Act No. 492, Legislative Session of 1951.) He prays for a declaratory judgment.

On this petition a rule was granted on the county controller, the county commissioners, and the Attorney General, since the constitutionality of the act was questioned, and these parties have appeared and answered. In addition, two taxpayers have been permitted to intervene because, under the Act of January 7, 1952, certain of the aldermen and justices' costs are payable from the county treasury.

The procedure is not precisely that laid down by legislation relating to declaratory judgments. The Act of May 22, 1935, P. L. 228, 12 PS §847 and following, provides for the petition and the form thereof, and requires an endorsement of a notice to defendants and the service thereof by giving a copy of the petition to the parties defendant. In any event, all of the parties have appeared and have filed answers, and it is a matter of such importance that we pass over the formal procedure and proceed to the merits of the case, since by appearance and answers the parties have waived any defects in procedure.

It is quite obvious that the public officials, dissatisfied with the decision of the county controller, have the right to raise and have determined the question re-

garding the construction or constitutionality of the Act of January 7, 1952, and that, by doing so, suits by individual officers will thereby be avoided and it is hoped that the controversy may be settled.

All of the officers involved were elected prior to January 7, 1952, on which date, the Governor approved the above act (P. L. 1841), which is entitled:

"An Act fixing the fees or costs to be charged by aldermen, magistrates and justices of the peace, and imposing liability therefor upon the county in certain cases."

The act provides that it shall be known as "Minor Judiciary Fee Bill" and that after the effective date the fees to be charged by aldermen, justices of the peace and magistrates shall be fixed by this act.

No effective date is specified in the Act of January 7, 1952, and, therefore, under article I, sec. 4, of the Act of May 28, 1937, P. L. 1019, 46 PS §504, as amended by the Act of June 3, 1941, P. L. 82, the act became effective from and after the first day of September next following its final enactment. The legislative session of 1951 was not a special or extraordinary session and the law did not affect the budget of any political subdivision, neither did it apply to appropriations, which are the exceptions specified in the later act.

By the Act of January 7, 1952, the fees payable to the minor judiciary are divided into certain classifications. Section 2 deals with the fees or charges regarding criminal cases, by specifying a lump charge for the different types of cases. This lump charge, ranging from $5 to $15 (with the exception of motor vehicle cases which had previously been fixed at a lump sum, and were increased by this act) may be an increase or decrease in the particular type of case, depending on what services were performed. Section 4 deals with the charges in civil cases in which a lump sum is fixed

in the designated type of case and may be an increase or decrease over the fees previously authorized, depending on what services are performed. Section 5 covers those services which are designated as unclassified fees or charges. As to these, charges for two identical services remain the same. Charges for identical services in all other instances are increased over the previous authorized fees. Section 6 relates to the charges made in Federal cases. All of the items under section 6 indicate an increased fee. Section 7 repeals the previous acts covering the subject of fees and costs.

It, therefore, appears that there is such an intermingling or grouping of those for which a lump sum is charged that it is impossible to determine whether the application of the Act of January 7, 1952, would result in an increase or decrease over the previously authorized fees and costs. Where the method adopted is a specific fee for certain services, in all items except two there is an increase. These two are: (1) Additional names after the first in every acknowledgment of a deed or other instrument of writing, 25 cents, which remains the same, and (2) marrying each couple, making a record thereof and certificate to the parties, $5. These two items remain unchanged from the previous fees authorized. The preceding act fixing fees was the Act of June 21, 1947, P. L. 862, 42 PS §211.

Defendants contend that the Act of January 7, 1952, cannot be applied to aldermen, magistrates and justices of the peace elected prior to the approval date of the act, to wit, January 7, 1952, because of article III, sec. 13, of the Constitution of Pennsylvania, which provides:

"No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment."

This section is a constitutional prohibition against

legislation affecting the class of public officers within its scope, which does any one of three things: (1) Extends the term; (2) increases the salary or emoluments, or (3) diminishes the salary or emoluments. Any legislation which is so construed as to do any one of these prohibited acts is unconstitutional.

It is not within our province to determine the policy or desirability of legislation or that a lump sum for all of the services in a certain proceeding is a more desirable method than the application of a specific fee for each item of services performed. This is a legislative power, limited, however, so that there shall be no conflict with the express terms of the Constitution.

Under the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §501 and following, our object in interpreting and applying the law as written is to ascertain and effectuate the intention of the legislature (article IV, sec. 51), and we are instructed under article IV, sec. 52, of this legislation that we are to presume that the legislature did not intend to violate the Constitution of the United States or of this Commonwealth. In applying and construing the Act of January 7, 1952, we should, therefore, so construe and apply the act that it does not conflict with the Constitution and that it may be upheld as constitutionally valid legislation.

There are no disputed facts. All of the parties involved have favored us with their research and we have examined the briefs and the cited authorities and such independent investigation as we have been able to make. From this we have reached the following conclusions:

1. The case presented before us shows the presence of antagonistic claims, indicating inevitable litigation, and manifests that the declaration of judgment sought would help in ending the controversy, and therefore

we deem it our duty to hear and determine the questions involved through the procedure of a declaratory judgment.

2. The purpose of the framers of the Constitution in placing the limitations upon legislative interference with the compensation received by a public officer for the duties normally incident to the office was to eliminate political or partisan pressure upon the incumbents of office after they had been elected or appointed: Hadley's Case, 336 Pa. 100.

3. All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them, and the legislature understood the facts of the particular case and did not intend to willfully disregard the Constitution: Hadley's Case, supra, and cases cited there; Loushay Appeal, 169 Pa. Superior Ct. 543.

4. The constitutional provision forbidding an increase or decrease in salary or emoluments of a public officer after his election is inexorable and may not be avoided by indirection. The substance and practical operation of the questioned statute, and not the terminology used, controls: Loushay Appeal, supra.

5. If by the construction placed upon questioned legislation, certain limited parts may validly apply, and generally these are inseparably interwoven with other parts which could not validly apply, then the whole of the legislation must be revoked: Kelley et al. v. Kalodner et al., 320 Pa. 180; Murray et ux. v. Philadelphia et al., 364 Pa. 156, 176; Grisbord et al. v. Philadelphia et al., 148 Pa. Superior Ct. 91.

6. Justices of the peace, aldermen and magistrates are public officers. They are a class of public officers which come within the protection of article III, sec. 13, of the Constitution of Pennsylvania, which provides: "No law shall extend the term of any public officer,

or increase or diminish his salary or emoluments, after his election or appointment": Freiler v. Schuylkill County, 46 Pa. Superior Ct. 58.

7. In construing and applying the Act of January 7, 1952, in view of the constitutional inhibition we are compelled to give this act such a construction and effect as will prevent it from increasing or diminishing the fees of aldermen, justices of the peace and magistrates elected or appointed before the date of its approval; otherwise, the act would be unconstitutional in all of its provisions except possibly two relatively minor items in which there are no changes: Lyons v. Means, 1 Pa. Superior Ct. 608; Freiler v. Schuylkill Co., supra; Walsh v. Norris, 49 Pa. Superior Ct. 545.

8. The Act of January 7, 1952, must, in view of the constitutional inhibition, be held to apply only to and regulate the fees of all the officers mentioned therein which are elected or appointed after the date of its approval: Lyons v. Means, supra; Freiler v. Schuylkill County, supra; Walsh v. Norris, supra.

9. While the Act of June 21, 1947, P. L. 862, 42 PS §211, is not specifically repealed by Act No. 492 of the sessions of 1951, the general repealing clause may be broad enough to effect its repeal. To comply with the constitutional requirement, it is, therefore, necessary that the repealing clause be construed so that it does not effectively repeal the Act of 1947 until the expiration of the terms of those officers whose fees are fixed by the Act of 1947; to hold otherwise would permit a diminishing of the fees and emoluments of the office.

And now, April 21, 1952, it is ordered, adjudged and decreed that fees, compensation and emoluments due to the plaintiff for services performed by him as an alderman and ex officio justice of the peace, cannot be lawfully fixed and determined under and in accord- ance with the Act of January 7, 1952, recited as

"Minor Judiciary Fee Bill," but must be fixed and determined by legislation approved at a date prior to the date of the last election of the public official. Upon the case stated, judgment is entered for defendants.

### SUPPLEMENTAL OPINION

GIBSON, P. J., May 15, 1952.—In our opinion in this case, filed April 21, 1952, we stated that the Act of January 7, 1952, would not become effective until September 1, 1952, because of the provisions of the Statutory Construction Act, which we referred to.

The Attorney General has called to our attention that we overlooked an Act of August 24, 1951, which again amended the Act of May 28, 1937. Under the provisions of this act, the Act of 1937 has been again amended by providing that where legislation is finally enacted after the first day of September of the year of the regular session, or after the date specified in the law, the same shall become effective immediately upon final enactment. This amendment was not noticed at the time the opinion was written.

The paragraph referred to in our opinion should therefore read:

"No effective date is specified in the Act of January 7, 1952, and therefore, under article 1, sec. 4 of the Act of May 28, 1937, P. L. 1019, 46 PS §504, as further amended by the Act of August 24, 1951, P. L. 1427, the act became effective immediately upon its final enactment, which was January 7, 1952."

This is so because the legislative session of 1951 was not a special or extraordinary session and the law did not affect the budget of any political subdivision; neither did it apply to appropriations, which are the exceptions to the general rule.

This correction will not change the final result of our decree dated April 21, 1952.